```
                    IN THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA

    - - - - - - - - - - - - - - - - x
    THE UNITED STATES OF AMERICA,
                                             Criminal Action No.
                  Plaintiff,                 1:18-cr-00078-PLF-1
                                             Tuesday, August 28, 2018
    vs.                                      10:06 a.m.

    ARNOLD S. BOON,

                  Defendant.
    - - - - - - - - - - - - - - - - x
```
_____

                       TRANSCRIPT OF STATUS CONFERENCE
              HELD BEFORE THE HONORABLE PAUL L. FRIEDMAN
                       UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the United States:    **STEVEN B. WASSERMAN, ESQ.**
                          **U.S. ATTORNEY'S OFFICE FOR THE**
                          **DISTRICT OF COLUMBIA**
                          555 Fourth Street, NW
                          Washington, DC 20530
                          (202) 252-7719
                          steve.wasserman@usdoj.gov


For the Defendant:        **ANDREA ANTONELLI, ESQ.**
                          **UNITED STATES ATTORNEY'S OFFICE**
                          **FOR THE DISTRICT OF COL**
                          555 4th Street NW
                          Washington, DC 20530
                          (202) 255-7723
                          andrea.antonelli@usdoj.gov


Court Reporter:           Lisa A. Moreira, RDR, CRR
                          Official Court Reporter
                          U.S. Courthouse, Room 6718
                          333 Constitution Avenue, NW
                          Washington, DC  20001
                          (202) 354-3187

```
 1                     P R O C E E D I N G S
 2            THE COURTROOM DEPUTY:  This is Criminal Action
 3   18-78, United States vs. Arnold S. Boon.
 4            Counsel, please step forward to the podium and
 5   state your appearances for the record.
 6            MR. WASSERMAN:  Good morning, Your Honor; Steven
 7   Wasserman on behalf of the United States.
 8            MS. ANTONELLI:  Good morning, Your Honor; Andrea
 9   Antonelli.  I recently entered my appearance on behalf of
10   Mr. Boon to replace Shelly Peterson from FPD.
11            THE COURT:  Okay.  Are you retained?
12            MS. ANTONELLI:  No, Your Honor.  Mr. Boon had, I
13   guess, discussed with Ms. Peterson the need for a new
14   attorney, and FPD contacted me pursuant to the Criminal
15   Justice Act and asked that I enter my appearance.
16            THE COURT:  Okay.
17            Good morning, Mr. Boon.
18            THE DEFENDANT:  Good morning, Your Honor.
19            THE COURT:  Well, just so the record is clear, the
20   last time we were here, which was back on July 26th, I had
21   recently received a letter from Mr. Boon.  And I thought I
22   had sent it at that point to counsel, and I'm not sure that
23   I had, but it would -- both Mr. Wasserman and Ms. Peterson
24   read the letter while we were here in court.
25            Correct, Mr. Wasserman?
```

1                MR. WASSERMAN:  Yes, Your Honor.

2                THE COURT:  And the letter complained about his

3    lawyer in Superior Court, complained about Mr. Vanegas from

4    the Federal Public Defender, who had been representing him,

5    and, as I read it, also complained about Ms. Peterson.

6                Ms. Peterson, I think having just seen the letter,

7    properly said that she did not think that we should proceed

8    with a plea or any other substantive proceedings until

9    either the matter was cleared up with Mr. Boon or she

10   withdrew and new counsel was appointed.  So apparently -- in

11   the interim Ms. Peterson has withdrawn, and Ms. Antonelli

12   has been appointed or has entered an appearance.

13               Just so Mr. Boon understands, the way the

14   system works here is that there is a -- for those that

15   cannot afford to pay lawyers, some lawyers are represented

16   by -- some clients -- some defendants are represented by

17   the Federal Public Defender, and both Ms. Peterson and

18   Mr. Vanegas are full-time lawyers with the Federal Public

19   Defender.

20               In addition, we maintain -- the Court maintains a

21   list of I think about a hundred lawyers who are available to

22   take cases on appointment; not paid for by the defendants,

23   if the defendants cannot afford to pay lawyers, but rather

24   paid for under the Federal Criminal Justice Act at some

25   number I no longer -- I don't remember what it is per hour.

1    And Ms. Antonelli has been on that list for some time and
2    has represented many defendants in this courthouse over the
3    years and was designated for appointment from that list.
4            So that's where we are.
5            Have you seen this letter, Ms. Antonelli?
6            MS. ANTONELLI:  Your Honor, I received a letter
7    emailed, I think, from chambers, and I'm not sure if it's
8    the new letter that you're referring to or the one that was
9    read in court the last time.
10           THE COURT:  You received it yesterday?
11           MS. ANTONELLI:  Yes.
12           THE COURT:  Okay.  It was in my file, and I
13   realized that what happened was that I had made a copy of --
14   that I had shown it to Mr. Wasserman and Ms. Peterson at the
15   last hearing.  I'm not sure that they actually got copies.
16           So normally I -- when I get a letter like this, I
17   will have my secretary email it to counsel.  So even though
18   this is -- this is the same letter I've been referring to.
19   It's just that we emailed it yesterday.
20           MS. ANTONELLI:  Very well, Your Honor.  Yes, I've
21   seen it.
22           THE COURT:  And the question I asked myself -- and
23   I'll ask counsel -- is whether or not, for any future issues
24   that possibly could arise, it would make sense to docket
25   this letter on the docket of the court, either openly or

1    under seal, in case issues arise later here or in the Court
2    of Appeals.
3            MR. WASSERMAN:  Your Honor, from the government's
4    standpoint, you know, in an abundance of caution it
5    certainly makes sense to make it part of the record to the
6    extent that, you know, there are any issues down the road
7    from an appellate standpoint, although obviously Ms.
8    Antonelli now is representing Mr. Boon, and the letter
9    obviously would not deal or address any representation
10   issues related to her or her involvement in the case.
11           So, I mean, I'll defer to the Court.  I don't
12   think it hurts to put it on the docket, whether it's under
13   seal or not.
14           MS. ANTONELLI:  And, Your Honor, I think my
15   position would be that -- I don't have a position regarding
16   under seal or just on the court docket, but I do think it
17   makes sense to docket it.  One concern I had that I think
18   the Court sort of just referred to was that Ms. Peterson
19   never actually filed a motion to withdraw that the Court
20   granted, so there may be a gap in the docket regarding why
21   I'm suddenly counsel of record.
22           And I actually -- just so the Court knows, when
23   FPD contacted me I said to them, "I can wait and enter my
24   appearance the day that we go to court after speaking with
25   Judge Friedman," and they said, "No, no, you should be

1    entering your appearance now and get going on the case."  So
2    just so the Court was aware of that.
3               But there is nothing in the record, I don't think,
4    that indicates a motion to withdraw or the reason for my
5    appointment.
6               THE COURT:  Okay.  Well, let me suggest the
7    following.  Do you know whether Ms. Peterson is planning to
8    file a formal motion to withdraw?
9               MS. ANTONELLI:  My understanding was she was not.
10   She was actually out of the jurisdiction when I was
11   contacted by FPD.  I contacted her.
12              THE COURT:  All right.
13              MS. ANTONELLI:  She contacted me and said, "Please
14   file your notice now.  Judge Friedman's aware of the issue."
15              THE COURT:  I'll talk with her, if nobody minds --
16   she's going to be here for another matter this afternoon --
17   and ask her if she wants to file a formal motion or, if not,
18   I can -- what I'm going to do, unless anybody objects, I'm
19   going to file this on the docket of the Court, and she will
20   be terminated, and the question is whether I need to wait
21   for a motion.
22              If she files a motion, bare bones motion -- or
23   maybe I'll just send her an email and copy you all in
24   just so the record -- for the record, Mr. Wasserman, if
25   Ms. Peterson files a motion to withdraw, does the government

```
 1     have any objection?
 2                MR. WASSERMAN:  No, Your Honor.
 3                THE COURT:  Okay.  So we'll file the letter on the
 4     docket.  I'll suggest to Ms. Peterson that she file a one-
 5     sentence, or whatever, motion to withdraw her appearance,
 6     and then we'll terminate her.  The government doesn't
 7     oppose, and you've already entered an appearance, so we can
 8     proceed as if I've already granted her motion.
 9                MS. ANTONELLI:  Thank you, Your Honor.
10                THE COURT:  And have you had an opportunity to
11     consult with Mr. Boon since you've entered your appearance?
12                MS. ANTONELLI:  Your Honor, he is at Northern
13     Neck, so actually today was the first day I was able to
14     speak to him down in the holding cell.  So in light of
15     that -- and I did receive the file from Ms. Peterson that
16     seems to have an extensive amount of discovery.
17                Government counsel and I have discussed my
18     request, which is going to be to waive some additional time
19     and come back for a status hearing so that I can get up to
20     speed on the discovery and meet with Mr. Boon.
21                THE COURT:  Okay.  Do you know what the current
22     policy is about people at Northern Neck?  I know that
23     they've -- there's some agreement that's been reached
24     between the Department of Corrections and the U.S. Marshals
25     Service going forward.  I don't know how it affects people
```

```
 1    who are currently there.  Maybe Mr. Kramer knows more than I
 2    do.
 3              The question is whether or not you're going to
 4    have sufficient opportunities to consult with Mr. Boon and
 5    decide what the best -- for him to decide what the best
 6    course of action is for him to take in this case.
 7              But in the meantime, you've agreed on a date and a
 8    time?
 9              MS. ANTONELLI:  We have, Your Honor --
10              MR. WASSERMAN:  Yes.
11              MS. ANTONELLI:  -- if it's acceptable to the
12    court.  We suggested October 23, 2018, if that's acceptable
13    to the Court.
14              THE COURT:  In the afternoon?
15              MS. ANTONELLI:  Yes, Your Honor.
16              THE COURT:  2:00?
17              MR. WASSERMAN:  Yes, Your Honor.
18              MS. ANTONELLI:  2:00, yes.
19              THE COURT:  2:00 on the 23rd.
20              MS. ANTONELLI:  And, Your Honor, just so the Court
21    knows, I've been involved in a couple of other cases where
22    people have filed things regarding their inability to see
23    clients because of their location, and my understanding from
24    the most recent email from Mr. Kramer is that at this point
25    there's not much that can be done about it; that the
```

1   Marshals, under certain circumstances, will bring prisoners
2   here for attorneys to meet with them.  And I think there
3   were a couple of limited circumstances, which were going
4   over a pretrial services report -- I'm sorry, a presentence
5   report, that type of thing.
6          I don't believe as of now there's any ability to
7   look at discovery or just meet with the client.
8          THE COURT:  Okay.  Well, let's put it this way, if
9   you find that, after you've reviewed the file and all of the
10  discovery and talk to Mr. Boon today while he's here, your
11  ability to -- I assume you're going to have to travel down
12  there at least once to meet with him and at greater length
13  than you can today.  If you need some relief, file
14  something, and I'll deal with it.  If you and Mr. Boon think
15  that you can determine -- you know, have sufficiently in-
16  depth conversations that you can figure out what you're
17  going to do going forward, that's fine.  But if you think
18  you need to seek some other arrangements, let me know.
19         This letter, if you read it, suggests that
20  Mr. Boon was concerned that with respect to his prior lawyer
21  in Superior Court, as well as with Mr. Vanegas, that he sort
22  of felt that people were not communicating with him well
23  enough and trying to pressure him to make certain decisions.
24         So I'll just say, Mr. Boon, for your benefit,
25  Ms. Antonelli is a good lawyer.  She can give you her best

1    advice, but the decision whether to plead guilty or whether
2    to go to trial is your decision.  Only the person who stands
3    accused can make that very important decision about whether
4    to go to trial or whether to enter a guilty plea.
5              A lawyer can explain to you the pros and cons and
6    explain to you the possible sentencing consequences and can
7    obviously explain to you, after she's reviewed the file and
8    all of the discovery, the strengths and weaknesses of the
9    government's case, what possible defenses you have, but at
10   the end of the day you're going to have to decide whether
11   you want a trial or not.
12             If you want a trial, that's why I'm here, and
13   we'll go to trial.  And when we come back here on October
14   the 23rd, we'll set a trial date.
15             If, on the other hand, you think that entering
16   a plea is the best thing for you, we can either do that on
17   the 23rd or set another date for a plea.  I'm confident
18   Ms. Antonelli will give you her time and her best advice,
19   and then you'll decide what you think is best for you.
20   Okay?
21             THE DEFENDANT:  Okay.
22             MR. WASSERMAN:  Your Honor, in that vein, I did
23   advise Ms. Antonelli that we would keep the plea offer open,
24   you know, given that she's been newly appointed, so I just
25   wanted to advise the Court of that.

1             I also wanted to advise the Court, I had --
2     because it appeared that we were going to be disposing of
3     the case by plea, I had delayed the DNA testing.  I'm going
4     to move forward with that DNA testing just to, you know,
5     move things along should we not be able to resolve the case
6     short of trial, at least just to make sure that we're at
7     least in that -- sort of moving in the right direction as
8     far as moving the case along.
9             And then I don't --
10            MS. ANTONELLI:  Mr. Wasserman and I discussed
11    before court, he does not oppose -- we're going to be
12    requesting a preplea calculation from pretrial services of
13    the criminal history category.
14            THE COURT:  Okay.
15            MS. ANTONELLI:  I'm not sure if the Court wants me
16    to file something, or if the Court's --
17            THE COURT:  No, I can just -- I will grant your
18    oral motion to ask probation to prepare -- and Ms. Johnson
19    can communicate with them, right? -- to prepare a guideline
20    calculation.  And what that means is that -- and to do it as
21    soon as they can, certainly well before the 23rd of October.
22            What that means is it's not a full-blown
23    presentence investigation report, but rather someone in the
24    probation office -- and they're all experts on the
25    guidelines -- will do a guideline calculation.  They will

1   look at the offense charged here.  They will look at the
2   guidelines.  They will figure out what the proper offense
3   level is in their view, and they will also investigate all
4   of Mr. Boon's prior convictions to determine criminal
5   history category.  And they'll put it all in writing.
6             That doesn't mean -- they'll put it all in writing
7   so that Mr. Boon and Ms. Antonelli can see what the
8   calculation is.
9             Obviously, as the lawyers know but Mr. Boon should
10  know as well, what the probation office says isn't the final
11  word.  When and if we get to sentencing in this case, I'm
12  the final word on how to read the guidelines.  But it's
13  often useful to have their professional opinion as to how to
14  read the guidelines in the circumstances.
15            Ms. Antonelli will do her own look at the
16  guidelines, I'm sure, in advising you, Mr. Boon, but she'll
17  also have the extra benefit of someone from probation having
18  done all of that.  They also have the ability that lawyers
19  don't have to reach out to Superior Court and to other
20  jurisdictions to see if there are prior convictions on
21  record to calculate criminal history category.
22            So that's useful.  So we'll ask them to do that.
23            Have you talked with Mr. Boon about the Speedy
24  Trial Act?
25            MS. ANTONELLI:  I did, Your Honor.  Could I have

|   |   |
|---|---|
| 1 | one second just to make sure he knows what we're referring |
| 2 | to? |
| 3 | THE COURT:  Yes. |
| 4 | MS. ANTONELLI:  Thank you, Your Honor. |
| 5 | (Pause) |
| 6 | MR. ANTONELLI:  I just wanted to confirm that he |
| 7 | did understand.  We discussed it earlier before court, and |
| 8 | he understands his rights under the Speedy Trial Act, and he |
| 9 | would like the Court to waive the time between now and our |
| 10 | next status hearing so that I have time to review the file |
| 11 | and discuss the case with him. |
| 12 | THE COURT:  Okay.  Mr. Boon, would you stand up |
| 13 | for a minute, please. |
| 14 | Mr. Boon, do you understand that you have a right |
| 15 | to a speedy trial? |
| 16 | THE DEFENDANT:  Yes, Your Honor. |
| 17 | THE COURT:  And are you willing to give up that |
| 18 | right between now and October the 23rd so that your lawyer |
| 19 | can investigate the case thoroughly and meet with you and |
| 20 | discuss your options with you? |
| 21 | THE DEFENDANT:  Yes, Your Honor. |
| 22 | THE COURT:  Okay.  Thank you very much, sir. |
| 23 | All right.  I find that it's in the interest of |
| 24 | justice to toll the running of the Speedy Trial Act between |
| 25 | now and October the 23rd so that Ms. Antonelli can get |

1    deeply into the matter, look at the discovery, look at the
2    evidence, talk to Mr. Boon, and discuss with him in depth
3    the options.  So I'll toll the running of the speedy trial
4    between now and October the 23rd.  Okay?
5               MS. ANTONELLI:  Thank you, Your Honor.
6               THE COURT:  Anything else?
7               MR. WASSERMAN:  Nothing from the government, Your
8    Honor.
9               MS. ANTONELLI:  Not from Mr. Boon, Your Honor.
10              THE COURT:  Okay.  Thank you.
11                   (Whereupon the hearing was
12                    concluded at 10:24 a.m.)

**CERTIFICATE OF OFFICIAL COURT REPORTER**

I, LISA A. MOREIRA, RDR, CRR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

   Dated this 21st day of September, 2022.


                              /s/Lisa A. Moreira, RDR, CRR
                              Official Court Reporter
                              United States Courthouse
                              Room 6718
                              333 Constitution Avenue, NW
                              Washington, DC 20001