```
 1                  BEFORE THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,          .
                                        .  Case Number 18-cr-78
 4           Plaintiff,                 .
                                        .
 5       vs.                            .
                                        .  Washington, D.C.
 6   ARNOLD S. BOON,                    .  April 22, 2019
                                        .  9:09 a.m.
 7           Defendant.                 .
     - - - - - - - - - - - - - - - - - -

 8

 9                     TRANSCRIPT OF PLEA HEARING
                    BEFORE THE HONORABLE PAUL L. FRIEDMAN
10                     UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the United States:       STEVEN WASSERMAN, AUSA
                                  United States Attorney's Office
14                                601 D Street Northwest
                                  Washington, D.C. 20579
15

16   For the Defendant:          JONATHAN ZUCKER, ESQ.
                                  37 Florida Avenue Northwest
17                                Suite 200
                                  Washington, D.C. 20002
18

19

20   Official Court Reporter:    SARA A. WICK, RPR, CRR
                                  United States District Court
21                                   for the District of Columbia
                                  333 Constitution Avenue Northwest
22                                Room 4704-B
                                  Washington, D.C. 20001
23                                202-354-3284

24
     Proceedings recorded by stenotype shorthand.
25   Transcript produced by computer-aided transcription.
```

```
 1                      P R O C E E D I N G S

 2          (Call to order of the court.)

 3              THE COURTROOM DEPUTY:  This is Criminal Action 18-078,

 4    United States versus Arnold S. Boon.

 5          Counsel, please step forward to the podium and state your

 6    appearances for the record.

 7              MR. WASSERMAN:  Good morning, Your Honor.  Steven

 8    Wasserman on behalf of the United States.

 9              THE COURT:  Mr. Wasserman.

10              MR. ZUCKER:  Good morning, Judge.  Jonathan Zucker on

11    behalf of the defendant, who is present.

12              THE COURT:  Mr. Zucker, good morning.  Good morning,

13    Mr. Boon.

14              THE DEFENDANT:  Good morning, Your Honor.

15              THE COURT:  So I have been having a little back issues

16    over the weekend.  So I am standing rather than sitting.

17          So I understand we are here for a plea this morning.  And I

18    just had one question of Mr. Wasserman just so I understand what

19    I read.  I read the plea papers and the statement of the

20    offense, and there's a consent of forfeiture in the government's

21    submission.  I also read the second superseding indictment.  And

22    there also was prepared previously a preliminary report from

23    Probation, document 17, some of which is still relevant, I

24    think, prepared by Ms. Willett.

25          I guess what you could explain to me, he is pleading, as I
```

1    understand it, to Counts 1 and 3.

2              MR. WASSERMAN:  Correct.

3              THE COURT:  What's the difference between the charge

4    in Count 2 and the charge in Count 3?

5              MR. WASSERMAN:  Your Honor, I don't have my --

6              THE COURT:  I can hand you a copy of the superseding

7    indictment, if you want.  I read it, and I'm sure that when it

8    was drafted and it's been explained, but I --

9              MR. WASSERMAN:  Count 2 is the conspiracy --

10             THE COURT:  Why don't you take a look.  Just for the

11   record, I'm curious to make sure I understand.  They're,

12   obviously, different.

13             MR. WASSERMAN:  You're asking what the difference

14   between Count 2 and Count 3 is?  For purposes of sentencing,

15   there wouldn't be --

16             THE COURT:  No, what are the difference in the

17   charges?  One is -- now you have it, and I don't.  So I can't

18   tell you specifically what I'm asking.  But I read the two of

19   them, and the language of the two of them look almost identical.

20             MR. WASSERMAN:  One just -- I'm sorry if I am stating

21   the obvious.  But one charge is a conspiracy because of the

22   involvement of other individuals, and the other is the

23   substantive.  That was the only reason why we added that count.

24             THE COURT:  I will take that back.  So he is pleading

25   to the underlying substantive offense, not the conspiracy?

1          MR. WASSERMAN:  Correct, yes.

2          THE COURT:  All right.  And the -- so in other

3    words -- maybe this is my confusion.  The conspiracy to

4    interfere with interstate commerce by robbery, the conspiracy

5    itself is set forth in 18 U.S.C. 1951?

6          MR. WASSERMAN:  Yeah, there's --

7          THE COURT:  Not in 371?

8          MR. WASSERMAN:  No.  There's a conspiracy count within

9    1951, yes, a conspiracy provision.

10          THE COURT:  By not going back to the statute, that's

11    my confusion.

12     And the other question, I take it since this is an

13    11(c)(1)(C) plea, which means the sentence has been agreed upon,

14    that even if the probation officer or I were to conclude that he

15    is a career offender, it would have no impact?

16          MR. WASSERMAN:  Only to the extent, I think, if the

17    Court -- my understanding is he is not a career offender.  We

18    went through this process earlier, I think late last year, and

19    then the preliminary criminal history calculation indicates that

20    he is not.

21          THE COURT:  But the plea agreement spends some time

22    discussing the possibility that he might be?

23          MR. WASSERMAN:  Yes, and that's just the sort of

24    standard language we put in every plea agreement, should it

25    ultimately be determined that he is a career offender, although

in this instance we actually determined that he wasn't prior to
doing the -- because we already had the preliminary criminal
history calculation.

But if the Court is -- we're not seeking --

THE COURT:  I'm not concerned.  I'm trying to
determine -- maybe Mr. Zucker can answer my question.  What's
the benefit of it being an 11(c)(1)(C), if not that?

MR. WASSERMAN:  It limits --

MR. ZUCKER:  Its a set sentence.  It's finality.  It's
done.  We know what the sentence is going to be.

THE COURT:  It's an agreed-upon sentence at the low
end of the guidelines?

MR. ZUCKER:  Essentially, yes.

THE COURT:  As opposed to the possibility of my using
my discretion somewhere within the guidelines?

MR. ZUCKER:  To go above that, yes, over the 92.

THE COURT:  Pardon me?

MR. ZUCKER:  Over the 92.

THE COURT:  And what I was reading and was asking
about is it also protects him if, for any reason, the Probation
Office or I were to conclude that in fact he is a career
offender.  By having an agreed-upon sentence, that would have no
impact.

MR. ZUCKER:  The fact that he is a career offender
would have no impact.  In all candor, I think what Mr. Wasserman

said is true.  That is boilerplate language in the plea

agreement.  It has nothing to do with this case in particular.

          THE COURT:  All right.

          MR. WASSERMAN:  Yes.  Thank you.

          THE COURT:  Okay.  Anything else you want to say

preliminarily?

          MR. ZUCKER:  No.  I think we are ready to proceed.

          THE COURT:  Mr. Boon, why don't you come on up to the

podium.  And why don't you stand in front of the microphone,

because most of my questions are for you, Mr. Boon.

          THE DEFENDANT:  Okay.

          THE COURT:  So look, I understand that today you are

prepared to plead guilty.  Is that correct, Mr. Boon?

          THE DEFENDANT:  Yes, Your Honor.

          THE COURT:  And I am going to ask you some questions

to make sure that you understand your rights and that this plea

is a voluntary plea.  If you don't understand any of my

questions, just stop me and tell me, and I will try to explain.

Okay?

          THE DEFENDANT:  Okay.

          THE COURT:  And if you want to stop at any point in

these proceedings and go have a private conversation with

Mr. Zucker, just tell me, and we can do that.  Okay?

          THE DEFENDANT:  I think I want to talk to him just for

a second.

1          THE COURT:  Sure.  Go ahead.

2      (Defense counsel and defendant conferred.)

3          MR. ZUCKER:  If I could just put something on the

4  record.  Mr. Boon wanted to confirm with me -- the questions

5  concerned him, and I have advised him that even if our

6  calculations were wrong and it was determined he was a career

7  offender, the (C) plea, assuming the Court accepted it and

8  imposed it, would still trump, that he did not need to be

9  worried about being found a career offender.

10          THE COURT:  And I agree with that.  If I accept the

11  (C) plea, I'm agreeing to a sentence of 92 months, and no matter

12  what the Probation Office says, you get the 92 months.

13          THE DEFENDANT:  Okay.

14          THE COURT:  Okay?

15          THE DEFENDANT:  Okay.

16          THE COURT:  Now, I will say again, though, Mr. Boon,

17  if you have any other questions you want to ask Mr. Zucker as I

18  go forward this morning with you, just tell me.  We will stop,

19  and you can talk to him for as long as you need.  All right?

20          THE DEFENDANT:  Okay.

21          THE COURT:  So I am going to ask Ms. Johnson to swear

22  you in so you will be under oath while you answer these

23  questions.

24          THE DEFENDANT:  Okay.

25      (Defendant sworn.)

1          THE COURTROOM DEPUTY:  Please state your name for the

2    record.

3          THE DEFENDANT:  Arnold Boon.

4          THE COURT:  All right, Mr. Boon.  You are now under

5    oath.  You need to answer these questions truthfully.  If for

6    any reason you didn't answer them truthfully, you could be

7    prosecuted later for perjury or for making a false statement.

8     Do you understand that?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Okay.  Mr. Zucker, do you have any

11    question about Mr. Boon's competence to understand these

12    proceedings and to enter a knowing, voluntary, and intelligent

13    plea this morning?

14         MR. ZUCKER:  None whatsoever.  Thank you.

15         THE COURT:  Do you, Mr. Wasserman?

16         MR. WASSERMAN:  No, Your Honor.

17         THE COURT:  I find that you are fully competent and

18    capable of entering an informed plea.

19     Now, I understand, Mr. Boon, that you are pleading guilty

20    to Count 1 and Count 3 of this superseding indictment.  Count 1

21    charges you with the unlawful possession of a firearm and

22    ammunition by a person who has previously been convicted of a

23    crime punishable by a term of a year or more, in other words a

24    person previously convicted of a felony.  And that's a violation

25    of 18 U.S. Code Section 922(g)(1).

1    Do you understand that?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  And Count 3 is interference with

4    interstate commerce by robbery and aiding and abetting in

5    violation of Title 18 United States Code Section 1951 and

6    Section 2.

7    Do you understand that?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  And is it your understanding that those

10   are the two counts that you are pleading guilty to?

11        THE DEFENDANT:  Yes.

12        THE COURT:  Have you had enough time and opportunity

13   to discuss this case and to discuss this plea with Mr. Zucker?

14        THE DEFENDANT:  Yes.

15        THE COURT:  And are you fully satisfied with

16   Mr. Zucker's representation of you?

17        THE DEFENDANT:  Yes.

18        THE COURT:  Do you understand that under the

19   Constitution and laws of the United States, you are entitled to

20   a trial by a jury on all of the charges contained in the

21   indictment?

22        THE DEFENDANT:  Yes.

23        THE COURT:  Do you understand that if there were a

24   trial, you would be presumed to be innocent, and the prosecutors

25   would have to prove you guilty beyond a reasonable doubt before

1    you could be found guilty?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that if there were a

4    trial, the government would have to bring witnesses to court who

5    would have to testify in your presence?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And do you understand that your lawyer

8    could cross-examine those witnesses, he could object to evidence

9    offered by the prosecutor, and he could offer evidence on your

10   behalf?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand that if there were a

13   trial, you would have the right to testify, but you would have

14   the absolute right to remain silent and not to testify?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand that if you chose to

17   remain silent, I would tell the jury that they could draw no

18   inference or suggestion of your guilt from the fact that you did

19   not testify?

20             THE DEFENDANT:  Yes.

21             THE COURT:  Do you understand that if I accept your

22   plea of guilty this morning, you will waive these rights, give

23   up these rights, there will be no trial, and I will enter a

24   judgment of guilty?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that if you plead

2    guilty, you will also be giving up your right not to incriminate

3    yourself because you are going to have to acknowledge what

4    happened, what you did, and your guilt in this case in order for

5    me to accept your plea?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand that the two offenses to

8    which you are pleading guilty are felony offenses and that if I

9    accept your plea you will be found guilty of those two felonies?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand that if I accept your

12   plea, you may be deprived of certain valuable civil rights such

13   as the right to vote, the right to hold public office, possibly

14   some jobs in government, possibly some jobs in the private

15   sector, the right to serve on a jury, and the right to possess

16   any kind of a firearm?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Mr. Boon, where were you born?

19          THE DEFENDANT:  Washington, D.C.

20          THE COURT:  Okay.  Now that I have discussed your

21   rights with you, do you have any questions about your rights?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Do you still want to enter a plea of

24   guilty?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Now, have you received a copy of the

2    superseding indictment?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And have you fully discussed the charges

5    in the indictment --

6          THE DEFENDANT:  Yes.

7          THE COURT:  -- with Mr. Zucker?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  And we have already discussed the

10   fact that you are pleading guilty to Count 1, possession of a

11   gun by a prior convicted felon, and Count 3, interstate --

12   interference with interstate commerce by robbery in violation of

13   18 U.S.C. 1951.

14         THE DEFENDANT:  Yes.

15         THE COURT:  Has Mr. Zucker discussed with you the

16   possible sentences you could receive if I accept your plea of

17   guilty?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Has he told you that under the 922(g)(1)

20   weapons charge, the maximum sentence is three years in prison, a

21   fine of $250,000, a period of supervised release of up to three

22   years, and possibly fines, possibly restitution, and a $100

23   special assessment?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Has he told you that under the --

1          MR. WASSERMAN:  Your Honor, I'm sorry.  Did you say
2     three years is the maximum or 10?
3          THE COURT:  Three years supervised release, 10 years
4     in prison.
5          MR. WASSERMAN:  Okay.  Yes.  I just wanted to make
6     sure that --
7          THE COURT:  Did you understand me to say up to 10
8     years in prison?
9          MR. ZUCKER:  I actually understood you to have made
10    the same mistake Mr. Wasserman suggested.
11         THE COURT:  All right.  I will ask you again,
12    Mr. Boon.  Do you understand that under the statute -- thank
13    you, gentlemen -- that under the statute, the maximum prison
14    sentence is 10 years?
15         THE DEFENDANT:  Yes, Your Honor.
16         THE COURT:  And after that, the maximum period of
17    supervised release is three years?
18         THE DEFENDANT:  Yes.
19         THE COURT:  Okay.  Thank you.  Turning now to Count 3,
20    interstate -- interference with interstate commerce by robbery,
21    do you understand that a violation of that statute, 18 U.S.C.
22    Section 1951, carries a maximum sentence of 20 years in prison?
23         THE DEFENDANT:  Yes.
24         THE COURT:  Do you understand that it also carries a
25    fine of up to $250,000, a term of supervised release of not more

1   than five years, and possibly fines and restitution and a

2   special assessment of another $100?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Okay.  Have I got it right?

5          MR. WASSERMAN:  Yes.

6          THE COURT:  So has Mr. Zucker also discussed with you

7   the federal sentencing guidelines and how they might apply in

8   this case?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Mr. Zucker, if you would tell us what you

11   have told him about the guidelines and what you all have agreed

12   to.  As I understand it --

13          MR. ZUCKER:  It has been a while.

14          THE COURT:  It's laid out in the written plea

15   agreement itself on pages 3 and 4.  Let me tell you what it

16   says -- remind you what it says.

17      You've read the plea agreement and discussed it with

18   Mr. Zucker, Mr. Boon?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Well, what it basically says is that for

21   the gun charge, we start with a base offense level of 20, and

22   because the firearm was stolen, we add two.  That's 22.

23      For the interference with interstate commerce by robbery,

24   we start with a base offense level of 20.  Because property of a

25   financial institution was involved, we add two.  Because the

amount of loss was above $95,000, we add another two, for a total of 24.

For some reasons that are hard even for lawyers to understand when we have these two charges, under the guidelines, we group them together, which gives us 26.  And then because you are pleading guilty and accepting responsibility, I reduce all of that by three, and we get to a level 23.  And that would be your offense level under the guidelines.

And then we have all of these criminal history points because of your prior convictions, your marijuana in 2009, your marijuana in 2011, your assault, second-degree assault in Prince George's County in 2011, your second-degree assault in 2013, flight in D.C. in 2018.  We add those all up, and we get under the guidelines 12 criminal history points, and because you committed these offenses while still under a sentence from earlier offenses, we add two more points, level 14 -- I mean criminal history points 14, which puts you in criminal history category VI.

And that's how we get the offense level 23 and criminal history category VI, 92 to 115 points -- 92 to 115 months.  Now, all of that is written on pages 3 to 5 of the plea agreement.

Counsel, you agree that that's what it says?

            MR. ZUCKER:  Yes.

            MR. WASSERMAN:  Yes, Your Honor.

            THE COURT:  So my question to you, Mr. Boon, is first,

1   have you -- I know it's a little complicated with all of these

2   numbers, but have you, in fact, had that discussion with

3   Mr. Zucker?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  And do you understand that the guideline

6   range is what I just said, 92 to 115 months?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Do you also understand that normally I

9   would have the right to go up above the guidelines or down below

10  the guidelines --

11          THE DEFENDANT:  Yes.

12          THE COURT:  -- depending upon all the facts and

13  circumstances?

14      Do you also understand that you have a limited right to

15  appeal from whatever sentence I impose, but that you've waived a

16  lot of those appeal rights in the plea agreement?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And do you understand in the federal

19  system there is no such thing as parole?  So whatever number of

20  months I sentence you to, that's what you're going to serve.

21          THE DEFENDANT:  Yes.

22          THE COURT:  Now, having said that, and I will ask

23  Mr. Zucker to explain the plea agreement a little fuller, but

24  having said that, I would say two things about the sentence.

25      One, you've been in D.C. jail; right?

1              THE DEFENDANT:  Yes.

2              THE COURT:  You've been locked up on this charge for

3    some time.

4              THE DEFENDANT:  Yes.

5              THE COURT:  So what I sentence you to, you will get

6    credit for the time you've already served.  Do you understand

7    that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you also understand that the Bureau of

10   Prisons, not me, but the Bureau of Prisons can give you up to 54

11   days a year in their discretion off that sentence for good

12   behavior when you're in the Bureau of Prisons?  Do you

13   understand that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you have any questions about what I

16   have said so far about sentencing?

17             THE DEFENDANT:  No, Your Honor.

18             THE COURT:  So, Mr. Zucker, now that I've said that,

19   do you want to say anything more about sentencing or about how

20   that is all impacted by the fact that this is an 11(c)(1)(C)

21   agreement?

22             MR. ZUCKER:  I think you've covered it all.  I mean,

23   he understands that, assuming the Court accepts it, that's the

24   sentence that will be imposed, and we all agree that that's

25   within -- A, it's at the bottom of the guidelines we have

1    predicted, and it's a reasonable sentence.

2         THE COURT:  Okay.  So if I accept the agreement under

3    11(c)(1)(C), I will agree to 92 months.  Do you understand that?

4         THE DEFENDANT:  Yes.

5         THE COURT:  And by pleading guilty today, you are

6    agreeing that 92 months is an appropriate sentence under all the

7    circumstances; right?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Okay.  So let me show you some documents.

10   One is the waiver of jury trial, and the other is the plea

11   agreement itself.

12      So would you look at first that one-page document, the

13   waiver of jury trial document.  Have you read that document and

14   discussed it with Mr. Zucker?

15        THE DEFENDANT:  Yes.

16        THE COURT:  And is that your signature on that

17   one-page document?

18        THE DEFENDANT:  Yes.

19        THE COURT:  All right.  Now, the longer document, the

20   plea agreement letter, have you read that and discussed it with

21   Mr. Zucker?

22        THE DEFENDANT:  Yes.

23        THE COURT:  All right.  And look at the last page of

24   that agreement, of the plea agreement.  Is that your signature

25   on the plea agreement?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Thank you.

3          MR. ZUCKER:  For record purposes, he actually signed

4   and we reviewed another copy that was identical, and that was

5   done some weeks ago.  This one was done this morning because

6   Mr. Wasserman's supervisor wasn't on the prior one.  But

7   Mr. Wasserman has represented it is the identical document, and

8   we accept his representations that it was the same one we

9   reviewed before.

10         THE COURT:  Thank you.

11         MR. WASSERMAN:  Yes, that's correct.

12         THE COURT:  All right.  So you have read the plea

13  agreement?

14         THE DEFENDANT:  Yes.

15         THE COURT:  And you have discussed it with Mr. Zucker?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And you have signed it?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Mr. Zucker, can you summarize any

20  important provisions of the plea agreement that we haven't

21  already discussed?

22         MR. ZUCKER:  I don't think there are any.  The

23  government is dismissing one count.  He's pleading to Counts 1

24  and 3.  And the sentence is what we've already discussed.

25         THE COURT:  Okay.  Mr. Wasserman?

1          MR. WASSERMAN:  Your Honor, the only other thing I

2    would add is, you know, in exchange for the defendant's plea, we

3    are dismissing the remaining counts of the indictment.

4       The plea agreement also provides for forfeiture as it

5    relates to the money stolen from the financial institution, as

6    well as provides for restitution.  Under the terms of the plea,

7    as I understand, typically, restitution will take precedence

8    over the forfeiture.

9          THE COURT:  It's the same amount of money?

10         MR. WASSERMAN:  It is the same amount of money, but

11   there is also an additional matter of restitution for the

12   damages to the property as a result of the robbery.

13         THE COURT:  All right.  So as I understand it, and let

14   me make sure that Mr. Boon understands it, in this plea

15   agreement, there is an amount of restitution to give back to the

16   victims, to the extent you can, over $130,000, $133,640.

17      Do you understand that is in there?

18         THE DEFENDANT:  Yes.

19         THE COURT:  And also for the damage to the ATM

20   machines and the other property?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Do you also understand that in this plea

23   agreement, you have agreed to forfeiture in the same amount of

24   $130,640?

25         THE DEFENDANT:  Yes.

1          THE COURT:  As I understand it, Mr. Wasserman just

2     said this, that as you pay this money going forward, the victims

3     will get their money first, and I understand that typically the

4     government recommends that any -- that you not be double-

5     counted.  In other words, even though you are agreeing to

6     forfeiture, that the money goes to the victim and you don't have

7     to pay double to the government.

8          Do you understand that?

9          THE DEFENDANT:  Yes.

10         THE COURT:  I'm going to show you two documents.  One

11    relates to forfeiture, and one is the statement of offense

12    document.

13         So let's talk about the consent of forfeiture document

14    first.  You are agreeing that I can sign an order saying that

15    you are going to consent to forfeiture?

16         THE DEFENDANT:  Yes.

17         THE COURT:  And showing you the last page of the

18    consent to forfeiture document, is that your signature on that

19    document?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  And have you read it --

22         THE DEFENDANT:  Yes.

23         THE COURT:  -- the order and talked to Mr. Zucker

24    about it?

25         THE DEFENDANT:  Yes.

1          THE COURT:  Okay.  Thank you.  And then the last

2    document that we are showing you is the statement of offense

3    document.  On page 5 of that document, is that your signature?

4          THE DEFENDANT:  Yes.

5          THE COURT:  And have you read the statement of

6    offense?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  And I may or may not have asked you

9    this before, but just to make sure I have covered all the bases

10   here, when we were talking about the plea agreement, have you --

11   do you understand the terms of the plea agreement?

12         THE WITNESS:  Yes.

13         THE COURT:  Do you understand what you have agreed to

14   and what the government has agreed to?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you have any questions you want to ask

17   me about it or ask Mr. Zucker?

18         THE DEFENDANT:  No.

19         THE COURT:  Any questions about the order of

20   forfeiture?

21         THE DEFENDANT:  No.

22         THE COURT:  Okay.  Mr. Boon, has anybody threatened

23   you or threatened anybody close to you or forced you in any way

24   to decide to enter this plea of guilty?

25         THE DEFENDANT:  No.

1        THE COURT:  And in terms of the sentence, basically,

2   have you been told that if I agreed -- normally, I would have

3   discretion, but under this plea agreement, I have been asked to

4   agree to what you and the government have agreed to, which is to

5   sentence you to 92 months.

6        THE DEFENDANT:  Yes.

7        THE COURT:  Let me just put on the record now before I

8   finally accept the plea that I will agree to sentence you to the

9   term that you and the government has agreed to.  I accept that

10  agreement, to sentence you to 92 months.  Okay?  Do you

11  understand?

12       THE DEFENDANT:  Yes.

13       THE COURT:  So I'm now bound.  I'm not going to go

14  above it, but I'm also not going to go below it.  Do you

15  understand?

16       THE DEFENDANT:  Yes.

17       THE COURT:  Okay.  So the document that you just

18  looked at called statement of the offense, at the very back --

19  have you read it and talked to Mr. Zucker about it?

20       THE DEFENDANT:  Yes.

21       THE COURT:  Is there anything in there you disagree

22  with or want to change?

23       THE DEFENDANT:  No.

24       THE COURT:  At the very end of that document, there is

25  a paragraph that says, "I have read the statement of offense and

carefully reviewed every part of it with my attorney.  I am

fully satisfied with the legal services provided by my attorney

in connection with the statement of offense and all matters

relating to it.  I fully understand the statement of offense,

and I voluntarily agree to it.  No threats have been made to me,

nor am I under the influence of anything that could impede my

ability to fully understand the statement of offense.  No

agreements, promises, understanding, or representation have been

made to or for me other than those set forth above."

     Was that true when you signed the document?

          THE DEFENDANT:  Yes.

          THE COURT:  And is that true today?

          THE DEFENDANT:  Yes.

          THE COURT:  And do you agree that it accurately sets

forth the facts?

          THE DEFENDANT:  Yes.

          THE COURT:  All right.  So Mr. Wasserman, in view of

his signing the statement of offense and his statements just

now, is there anything you want to add about that?

          MR. WASSERMAN:  No, Your Honor.

          THE COURT:  Okay.  So you are satisfied with the

record?

          MR. WASSERMAN:  Yes, I am.

          THE COURT:  Do you have any questions you want to ask

me or Mr. Zucker before I accept your plea?

1            THE DEFENDANT:  No, Your Honor.

2            THE COURT:  So are you pleading guilty this morning

3    voluntarily and because you are guilty?

4            THE DEFENDANT:  Yes.

5            THE COURT:  In that case, I find that you know of your

6    right to a jury trial and have chosen to waive that right.  I

7    find that since I have discussed the statutory maximums for each

8    of these two offenses and the sentencing guidelines and since I

9    have agreed to sentence you under Rule 11(c)(1)(C) to 92 months

10   in prison and since you have agreed, both in writing and today

11   while under oath, to the facts set forth in the statement of

12   offense, I find that your plea of guilty is a knowing and

13   voluntary plea supported by an independent basis in fact

14   containing each of the essential elements of the offense.

15        And so I accept your plea of guilty, and I will enter a

16   judgment of guilty on Count 1 of the superseding -- second

17   superseding indictment, which is possession of a firearm and

18   ammunition by a prior convicted felon in violation of 18 U.S.C.

19   Section 922(g)(1), and Count 3, interference with interstate

20   commerce by robbery and aiding and abetting in violation of

21   18 U.S.C. 1951 and 2.

22        So we will get a -- I guess we will get a further report --

23   well, let's talk about sentencing.  Mr. Boon, you can have a

24   seat.  We are going to talk about sentencing and a sentencing

25   date.

1          THE DEFENDANT:  Okay.

2          MR. ZUCKER:  Frankly, what Mr. Wasserman and I were

3   discussing, since we've already -- there's already been a

4   calculation of where he is on criminal history and the

5   guidelines are not disputed by either side, I don't know if

6   there's anything we can do to either expedite or waive the

7   presentence report.  I know you have to make certain

8   calculations, but I'm wondering if there is enough there already

9   based on the criminal history calculation.

10         I've discussed it with Mr. Boon, and he would prefer to

11  proceed to sentencing as expeditiously as possible and to get to

12  the feds, in all candor.  So that if the issue is waiver of a

13  presentence report, of a full presentence report, he is prepared

14  to do that, and I don't see any downside to it.

15         MR. WASSERMAN:  Your Honor, let me just say, it's my

16  understanding that the office policy is we're not authorized to

17  agree to a waiver.  So my hands are tied as far as agreeing to a

18  waiver.

19         Obviously, the criminal history calculation has been done.

20  So to the extent that the matter can be expedited, I suspect

21  that that would be -- we would be able to do that.

22         THE COURT:  I think we can expedite it.  I will talk

23  to Ms. Willett in Probation.  I don't know that we need a full

24  report.

25         MR. WASSERMAN:  Okay.

1    THE COURT:  So that having been said, I might like --

2    let me talk to her, but today is the 22nd.  You're in trial?

3    MR. ZUCKER:  Yeah, but the jury's already got the

4    case.  I'm around here all day anyway, if you want to talk to

5    her and reconvene just to set a date.

6    THE COURT:  Oh, you're in trial?

7    MR. WASSERMAN:  Yes.  I should be finished by

8    Thursday.

9    THE COURT:  So when do you want to do this?

10    MR. ZUCKER:  How long do you think we need?

11    THE COURT:  A couple weeks.

12    MR. ZUCKER:  May 7th, I have depositions in the

13    morning at 11:00.  I can do it before or after.

14    THE COURT:  I'm not sure we can do it by May 2nd,

15    but --

16    MR. ZUCKER:  I was talking about May 7, but if you're

17    talking May 2, hold on one second.  Is that what you are

18    suggesting, Judge?

19    THE COURT:  I am.

20    MR. ZUCKER:  I can do it if you think you will be

21    ready in time.

22    THE COURT:  I have a bunch of things in the afternoon.

23    I'm trying to remember why I don't have anything in the morning.

24    Let's do this.  Let's try for May 2nd, but you both are also

25    available May 7th and the 8th?

1          MR. ZUCKER:  The 7th, either early or late.  I have

2    something at 11:00.  So I could do it at 9:00, 9:30, or I could

3    do it any time in the afternoon on the 7th.  And the 8th is

4    probably bad because I may have to go out to P.G. County.

5          THE COURT:  Let's do this:  Put it down for May 2nd at

6    10:00 a.m.  And I will call Ms. Willett and see if I can get

7    from her what I need, which isn't much.  And we will come back

8    on the 2nd at 10:00 for sentencing, and we will get this done.

9       If for any reason that doesn't work, I know of your

10   availability the following week, and I will have Ms. Johnson

11   enter a minute order changing it from the 2nd.  For now,

12   consider that it is May 2nd at 10:00 a.m.

13         MR. WASSERMAN:  Very well, Your Honor.  Thank you.

14         MR. ZUCKER:  Thank you, Judge.

15         THE COURT:  Okay.  Mr. Boon, I will see you then.

16      (Proceedings adjourned at 9:44 a.m.)

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3            I, Sara A. Wick, certify that the foregoing is a

4      correct transcript from the record of proceedings in the

5      above-entitled matter.

6

7

8      /s/ Sara A. Wick_____          October 19, 2022__

9      SIGNATURE OF COURT REPORTER              DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25